F I L E D
United States Court of Appeals
Tenth Circuit

JUL 30 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

LUIS GEDO,

      Plaintiff-Appellant and
      Cross-Appellee,

v.

COBE LABORATORIES, INC., a
Colorado corporation and division of
Gambro, A.B.,

      Defendant-Appellee and
      Cross-Appellant.

Nos. 96-1237 & 96-1266
(D.C. No. 94-M-2862)
(D. Colo.)

ORDER AND JUDGMENT[*]

Before ANDERSON, LOGAN, and EBEL, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

these appeals. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cases are

therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Luis Gedo appeals the district court's grant of summary judgment to defendant Cobe Laboratories, Inc., on his complaint alleging discriminatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 to 17, and 42 U.S.C. § 1981. Defendant cross-appeals the district court's denial of its request for an award of attorney fees pursuant to 42 U.S.C. § 2000e-5(k). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. Background

Plaintiff, a naturalized United States citizen originally from Uruguay, worked for defendant for approximately ten years before his termination on April 21, 1993. Plaintiff alleged that after defendant hired Thomas Fletcher as an electrician in plaintiff's work unit in 1987, he experienced numerous incidents of ethnic harassment involving Mr. Fletcher and a number of other nonminority workers. In September 1992, in response to personal conflicts within plaintiff's work unit, Dennis Hiiva, plaintiff's supervisor, and several people from defendant's human resources department met with the workers in an attempt to ease tension.

As a result of this meeting, the employees in the unit were instructed to remove all offensive signs and posters from the work area. See Appellant's App., Declaration of Dennis Hiiva at 151. Apparently plaintiff left work after the meeting without removing two of his posters. See id. at 99, 101. Mr. Fletcher

-2-

removed plaintiff's remaining posters, leaving plaintiff a voice mail message informing him of the removal. When plaintiff learned that Mr. Fletcher had removed the posters, he left Mr. Fletcher two voice mail messages which were perceived by management as being threatening in content and tone. See id. at 151, 157.

As a result of this incident, Mr. Fletcher received a two-day suspension based on uncertainty as to his motive for removing the posters, and plaintiff received a five-day suspension based on the threatening tone of his messages to Mr. Fletcher. Both men were placed on probation for one year with a warning that "[a]ny further occurances (sic) will result in termination." Id. at 154-55, 159-60.

On April 8, 1993, while he was still on probation, plaintiff engaged in aggressive behavior and the use of inappropriate language during an argument with Mr. Hiiva. This was the second such incident in a short period of time. After the last incident, Mr. Hiiva met with personnel from human resources regarding plaintiff's behavior and, following an investigation, the decision was made to terminate plaintiff as of April 21, 1993.

In filing this action, plaintiff alleged that Mr. Fletcher engaged in behavior equally as offensive as that of plaintiff, but was not similarly disciplined. He asserted that this disparate treatment proves that defendant's stated reason for

terminating him was pretextual, and the real motivation for his termination stemmed from ethnic discrimination. For the following reasons, we agree with the district court that plaintiff's allegations do not establish a prima facie case of discriminatory discharge.

## II. Discussion

### A. Standard of Review

"We review de novo the grant of summary judgment and apply the same legal standards as the district court under Rule 56." Aramburu v. The Boeing Co., 112 F.3d 1398, 1402 (10th Cir. 1997). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of of law." Fed. R. Civ. P. 56(c).

### B. Title VII Claims

Under the three-step burden shifting format set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applicable to claims of disparate treatment, the plaintiff has the initial burden of establishing a prima facie case of discrimination. See Elmore v. Capstan, Inc., 58 F.3d 525, 529 (10th Cir. 1995). In order to prove a prima facie case in a disparate treatment claim relating to discharge for violation of a work rule, plaintiff must show "'(i) that [the plaintiff] belongs to a [protected class]; (ii) that he was discharged for violating a work rule . . . ; and (iii) that similarly situated non-minority employees . . . were

-4-

treated differently.'" EEOC v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir. 1992) (quoting McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1260 (10th Cir. 1988)).

"Once plaintiff establishes a prima facie case, the burden of production shifts to defendant to articulate a facially nondiscriminatory reason for its employment action." Elmore, 58 F.3d at 530. At this stage, defendant is required only to proffer a reason for the discharge that is not, on its face, proscribed by Title VII. See Flasher, 986 F.2d at 1316 n.4. Once defendant has met this burden, plaintiff assumes the burden of proving either that defendant acted with a discriminatory motive or that the reason articulated was a pretext for discrimination. See Elmore, 58 F.3d at 530. In a disparate treatment case, this burden can be met by showing that other similarly situated nonminority employees were treated differently for the same rules' infractions. See id.

Plaintiff contended that Mr. Fletcher, a nonminority employee, had also engaged in insubordinate behavior and the use of inappropriate language and gestures, but had not been similarly disciplined. In granting summary judgment to defendant, the district court concluded that Mr. Fletcher was not similarly situated to plaintiff when he engaged in comparable conduct. Specifically, the court found that, because Mr. Fletcher's comparable conduct occurred prior to the institution

of the period of probation, plaintiff had failed to establish a prima facie case of discriminatory discharge. See Appellant's App. at 319-20. We agree.

Plaintiff argues that the focus of the district court's analysis should have been on the "nature" of the infractions being compared and not on whether the infractions occurred prior to the start of Mr. Fletcher's probationary period. Even if we assume that Mr. Fletcher's infractions of the rules were equally as offensive as those of plaintiff, see Flasher, 986 F.2d at 1316 ("[t]he infractions giving rise to the comparison need not involve exactly the same offense; they need only be of comparable seriousness"), we are still left with the fact, correctly pointed out by the district court, that because of the timing, the two employees were not similarly situated at the respective times they engaged in the offensive behavior. It is undisputed that Mr. Fletcher's behavior, giving rise to the comparison, occurred before the intervention of the supervisor and human resources personnel, and more importantly, before the institution of the probationary period and warning regarding the consequences of future offensive behavior. See Flasher, 986 F.2d at 1320 (differences in treatment between different employees can be explained by the fact that "individualized circumstances surrounding the infractions offered some mitigation for the infractions less severely punished").

Although "'[d]ifferential treatment not premised on rational business policy may in some instances support an inference of illegal discriminatory intent,'" it

may also adequately be explained, as here, by the fact that the discipline was given "'at different times when the company's attitudes toward certain infractions were different.'" David v. City & County of Denver, 101 F.3d 1344, 1359-60 (10th Cir. 1996) (quoting Flasher, 986 F.2d at 1320); see also Aramburu, 112 F.3d at 1404 (in determining whether employees are similarly situated, court should "compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees").

Therefore, we agree with the district court that plaintiff fails to present evidence that defendant's reasons for terminating plaintiff were a pretext for illegal discrimination simply because Mr. Fletcher, a nonminority, was not similarly disciplined for similar behavior prior to the institution of the probationary period. See Flasher, 986 F.2d at 1321 ("An inference of illegal discrimination based upon protected class characteristics is not legally compelled by irrational or accidental disparate treatment between minority and non-minority employees."). Moreover, in light of the record, we conclude that none of plaintiff's evidence demonstrated that his termination was due to any intentional discrimination based on his national origin. He presented no direct evidence of defendant's discriminatory motive, or indirect evidence which would call into

question defendant's motives.  See Elmore, 58 F.3d at 530.  Accordingly, we affirm the district court's grant of summary judgment to defendant on this claim.

## C.  Attorney Fees

Defendant cross-appeals the district court's denial of its request for attorney fees pursuant to 42 U.S.C. § 2000e-5(k).  The district court denied this request without making specific findings.[1]

A defendant in a Title VII action is entitled to an award of attorney fees only upon the court's finding that plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christianburg Garment Co. V. EEOC, 434 U.S. 412, 422 (1978).  We review the district court's denial of attorney fees for an abuse of discretion.  See Urban ex rel. Urban v. Jefferson County Sch. Dist. R-1, 89 F.3d 720, 728 (10th Cir. 1996).

Defendant argues that plaintiff brought his original complaint based on a theory of hostile work environment.  When faced with defendant's summary judgment motion based on the assertion that plaintiff's claims against his co-workers were time barred, he filed his brief in opposition, asserting a disparate treatment claim.  Defendant asserts that, under either theory, plaintiff's claims were frivolous and groundless.

---

[1]    With certain exceptions not pertinent here, in federal court, "[f]indings of fact and conclusions of law are unnecessary on decisions of motions."  Fed. R. Civ. P. 52(a).

Here, the district court reached its summary judgment decision following full hearing. Thus the court was in the best position to make a determination regarding the merit of plaintiff's claims. Accordingly, given the stringent standards for an award of attorney fees to a defendant in a Title VII action and the amount of deference afforded the district court in making attorney fee determinations, we find no error in the district court's denial of defendant's motion.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge